UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LYNETTA WESTBROOK, | Case No.:1:11-cv-03961-NJV |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, | |
| Defendant. | Re: Dkt. Nos.  16, 19 |

**INTRODUCTION**

Plaintiff Lynetta Westbrook seeks judicial review of a June 21, 2010 administrative law judge ("ALJ") decision denying her application for Social Security disability benefits and Supplemental Security Income.  Doc. No. 16.  Westbrook's request for review of the ALJ decision was denied by the Appeals Council on June 10, 2011.  Administrative Record ("AR") 1-6.  The ALJ decision thus is the "final decision" of the Commissioner of Social Security, which this court may review pursuant to 42 U.S.C. § 405(g).  *See Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1988).  Both parties have consented to the jurisdiction of a magistrate judge.  Doc. Nos. 21 & 22.  The parties have filed cross-motions for summary judgment.  The court therefore may review the Commissioner's decision and decide the parties' cross-motions for summary judgment.

**LEGAL STANDARD**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## BACKGROUND

**A.      Westbrook's Application.**

        Westbrook applied for Supplemental Security Income on August 29, 2008, and protectively applied for disability benefits on February 18, 2009. AR 62, 213. She complained that sharp pains in both her knees prevented her from working. AR 167. After her applications were denied initially and on reconsideration, Westbrook requested a hearing before an ALJ. AR 55-58, 75-88, 89-90. In her pre-hearing memorandum, she alleged that she suffered from a number of impairments: bilateral knee osteoarthritis, degenerative disc disease, obesity, and adjustment disorder with mixed emotional features. AR 214. The hearing took place on June 8, 2010, and the ALJ issued his decision on June 21, 2010. AR 10-54, 62-74.

**B.      The ALJ's Use of the Five-Step Sequential Evaluation for Determining Disability.**

        A person filing a claim for social security disability benefits ("the claimant") bears the burden of proving her disability. 20 C.F.R. § 404.1512(a). The claimant must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *Id*. § 404.1505. The ALJ must consider all evidence in the claimant's case record to determine disability (20 C.F.R. § 404.1520(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (20 C.F.R. § 404.1520(a)(4)). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are

considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Westbrook's application for benefits under the required five-step sequential evaluation. *See* AR 62-69.

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the date she allegedly became disabled. 20 C.F.R. § 404.1520(a)(4)(i), (b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Westbrook originally alleged that she became disabled on October 10, 2007, but amended her onset date to June 17, 2008. AR 213. Although she worked after her alleged onset date of disability, the ALJ found that the level of work involved did not rise to the level of substantial gainful activity. AR 64.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii), (c). A "severe" impairment is one defined as significantly limiting physical or mental ability to do basic work activity. 20 C.F.R. § 404.1520(c). The ALJ found that Westbrook suffered from several severe impairments: obesity, osteoarthritis, and degenerative joint disease of the knees, bilaterally. AR 65. The ALJ also considered Westbrook's depression but found that it had not significantly affected her ability to perform basic work activities. *Id*. In addition, the ALJ found that her depression had not lasted a continuous 12 month period, and that Westbrook was receiving treatment for the condition. *Id*. Thus, he found her depression was not a severe impairment. Similarly, he considered her acute tendonitis but determined that it was reasonably expected to resolve in less than 12 months and thus also was not a severe impairment. *Id*.

At Step Three, the ALJ compares the claimant's impairments to a listing of impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to Step Four. 20 C.F.R. § 404.1520(a)(4), (e). Here, the

United States District Court
Northern District of California

3

United States District Court
Northern District of California

ALJ found that Westbrook did not have an impairment or combination of impairments that meet or equal one of the listed impairments.  The ALJ considered Listings under 1.00 (Musculoskeletal System), but did not specify which Listings under 1.00 he considered, or why he concluded that Westbrook did not meet or equal them.  He based his conclusion on the fact that the Disability Determination Service determined that Westbrook's impairments did not meet any of the listed impairments; that no treating or examining physician "mentioned findings equivalent in severity to the criteria of any listed impairment;" and that the orthopedic consultative examiner found that Westbrook had a normal range of motion in both knees, that the left knee was unremarkable, and that the right knee had crepitus, swelling and tenderness but no deformity or instability.  AR 65.

In analyzing Westbrook's RFC, the ALJ took into account the findings of Dr. Georgis (the orthopedic consultative examiner), a report by Dr. Specht (one of Westbrook's treating physicians), an assessment by Dr. Dann (a non-examining medical consultant), as well as Westbrook's medical records and her testimony.  AR 66-67.  He did not afford great weight to the opinion of Dr. Specht because she had seen Westbrook only once, and her assessment was not supported by medical findings.  AR 66.  The ALJ also considered Westbrook's self-statements regarding the intensity, persistence and limiting effects of her symptoms, but found Westbrook not fully credible.  AR 67.  In determining Westbrook's RFC, the ALJ considered all the impairments he identified at Step Two, regardless of severity.  *See* AR 65, 67 (taking into consideration impact of claimant's obesity on knee pain and decreased concentration due to medication).[1]  He concluded that Westbrook had the RFC to perform light work, with additional limitations based on her self-reported physical symptoms and medication side-effects.  AR 65.

At Step Four, the claimant bears the burden of showing she does not have sufficient RFC

---

[1]  Obesity, alone, is not considered disabling.  *See* SSR 02-1p.  When evaluating the impact of a claimant's diagnosed obesity, the Commissioner will not make assumptions about the severity or functional effects of obesity combined with other impairments.  *See id*.  "Obesity may still enter into a multiple impairment analysis, but only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system."  *Celaya v. Halter*, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Without evidence of functional impairments resulting from obesity, the ALJ is prohibited from making the assumption that obesity itself is somehow disabling.  *See id*.  The mere existence of an impairment, such as obesity, is insufficient proof of a disability.  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

to perform past relevant work due to her impairments and/or limitations.  20 C.F.R.

§ 404.1520(a)(4)(iv), (e), (f).  The ALJ determined that Westbrook could not perform her past

relevant work.  AR 65.

At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

some other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R.

§ 404.1520(a)(4)(v), (g).  Here, the ALJ credited the testimony of a vocational expert ("VE") who

testified that given her RFC (taking into consideration additional limitations, including those due

to possible medication side effects), Westbrook could perform sedentary work such as order clerk

or final assembler of optical goods.  AR 69.  Because these jobs were found in sufficient numbers

in the national economy and local economies, the ALJ found Westbrook was not disabled

between October 10, 2007 and the date of decision, June 21, 2010.  *Id.*; *see also* Doc. No. 19 at 1.

## C.    Westbrook's Request for Review by the Appeals Council.

Westbrook requested review of the ALJ decision.  AR 140-141.  She argued that there was

no substantial evidence to support the ALJ's findings, that the ALJ did not provide adequate

reasons for rejecting Dr. Specht's opinion, and that the ALJ failed to state why the testimony of

the VE cured conflicts between the Dictionary of Occupational Titles ("DOT") "and what she

stated."  *Id.*  Westbrook also provided a physician medical source statement by Dr. Lyudmila

Fortenko, Westbrook's long-term primary care physician.  AR 367-372.  This report was created

after the ALJ hearing, and was not provided to the ALJ.  The Appeals Council found that the ALJ

had provided adequate explanation for not giving controlling weight to Dr. Specht's opinion and

that the VE adequately addressed the conflicts between the DOT and her testimony.  AR 2.  The

Appeals Council considered Dr. Fortenko's report and concluded that "it would not have

affected" the ALJ's decision because (1) it contained some inconsistencies in section e, and (2)

the assessment was inconsistent with the claimant's activities.  *Id.*  The Appeals Council denied

Westbrook's request for review.  AR 1.  The ALJ's decision thus became the final decision of the

Commissioner of Social Security.

**D.      Westbrook's Appeal to this Court.**

Although she was represented by counsel throughout the administrative proceedings, Westbrook is proceeding *pro se* in this action.  In her motion for summary judgment, Westbrook argues that she can no longer work in her past line of work (construction) because her knees hurt and the medicine she takes for the pain makes her drowsy.  *See* Doc. No. 16.  She also references an issue regarding her 2008 earnings.  As described above, the ALJ did not base his disability determination on either of these grounds.  He agreed with Westbrook that she could not perform her past relevant work, and he concluded that her 2008 earnings did not amount to substantial gainful activity.  (Westbrook's 2008 earnings, however, did play a role in the ALJ's credibility assessment.)

Westbrook also mentions she suffers from depression and stress, although she does not argue that these conditions prevent her from working.  *See* Doc. Nos. 17 & 22.

## II.      DISCUSSION

As discussed above, the only two arguments that Westbrook raises in her motion for summary judgment challenge points on which the ALJ agreed with Westbrook.  Because Westbrook is proceeding without an attorney, the court will review the ALJ's decision to ensure that it was supported by substantial evidence and free of legal error.[2]  The court addresses only those findings that were not in Westbrook's favor.

**A.      Evidence Supporting The ALJ's Determinations At Step Two.**

Westbrook does not directly challenge the ALJ's determinations at Step Two, and the court concludes that there was substantial evidence to support the ALJ's findings.  To the extent he found that Westbrook's impairments were not severe, he supported his conclusions with substantial evidence.  He found that Westbrook's depression was not severe because there was no evidence that her condition had prevented her from performing basic work activities.  Westbrook alleges that she stopped working due to knee pain in October 2007.  She has not argued, and no medical provider has suggested, that her depression interfered with her ability to perform basic

---

[2]  A claimant who fails to argue an issue with specificity normally waives the issue on appeal. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citing *Paladin Assocs., Inc. v. Montana Power Co.,* 328 F.3d 1145, 1164 (9th Cir. 2003)).

United States District Court
Northern District of California

1    work activities.  Moreover, neither of her treating physicians indicated that Westbrook was

2    depressed when they submitted their "Medical Source Statement" to the Social Security

3    Administration.  *See* AR 336-339 (Dr. Specht), 368-372 (Dr. Fortenko).

4            There also is substantial evidence to support the ALJ's finding that Westbrook's

5    depression and tendonitis had not lasted a continuous 12 months.  An impairment must have

6    lasted or be expected to last for a continuous period of at least twelve months to constitute a

7    disabling impairment.  *See* 20 C.F.R. § 404.1505; *see also Flaten*, 44 F.3d at 1459.[3]  In March

8    2009, Westbrook denied being depressed.  AR 255; *cf.* AR 302 (November 2009 progress notes

9    indicating that due to divorce and being laid off, Westbrook was "getting counseling for stress

10   and is scheduled for some group meetings").  In January 2010, Westbrook for the first time

11   reported symptoms of depression and anxiety and obtained a prescription for an antidepressant.

12   AR 341 (January 28, 2010 diagnosis of "adjustment disorder with mixed emotional features"),

13   348-49.  At the hearing before the ALJ, Westbrook confirmed that she had been taking anti-

14   depressant medication for three or four months, had visited a psychiatrist once in person, and

15   spoke to him "now and then" on the phone.  AR 20.  The ALJ did not explicitly address whether

16   Westbrook's depression could be expected to last for a continuous period of not less than 12

17   months, but any error was harmless given the ALJ's primary finding that Westbrook's depression

18   had not interfered with her ability to perform basic work activities.  Although Westbrook was

19   diagnosed with tendonitis in November 2009 (AR 301-02, 358-62), Westbrook testified she only

20   saw the podiatrist once and stopped wearing the cast he prescribed after two weeks (AR 23-24).

21   No treater opined that Westbrook's tendonitis had lasted or was expected to last for more than 12

22   months.  *But see* AR 315 (consultative examiner opined tibial dysfunction would last 12

23   continuous months).

24   **B.      Evidence Supporting The ALJ's Determinations At Step Three.**

25           1.   The ALJ's conclusion that Westbrook's impairments did not meet or equal a

26                listing is supported by substantial evidence.

27   _____

28   [3]  For this same reason, Westbrook's prior periods of short-term disability, which all lasted less than twelve months (AR 228, 257, 259), do not establish that she has a disability as defined by the Social Security Administration.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At the outset, the undersigned notes that the ALJ failed to set out his analysis of why Westbrook did not meet or equal any of the listings under Listing 1.00; he merely stated that Westbrook did not meet any of them.  AR 65.  However, the opinion makes clear that the ALJ did, in fact, analyze the relevant issues.  In order to meet or equal a listing under Listing 1.00, the claimant must exhibit

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

After stating that Westbrook did not meet any of the listings under Listing 1.00, the ALJ referenced the opinion of Dr. Georgis, the consultative examiner who found that Westbrook had a normal range of motion in both knees, that her left knee was unremarkable, and that her right knee had crepitus, swelling and tenderness but no deformity or instability.  AR 65 (citing AR 313-14).  Dr. Georgis' findings that Westbrook did not have a "gross anatomical deformity" or "limitation of motion" in her knees constitute substantial evidence supporting the ALJ's conclusion that Westbrook did not meet or equal any of the listings at 1.00.  The ALJ's evaluation of the evidence, including specific citation to the relevant evidence, was an adequate statement of the foundations on which he based his conclusion.  "The regulations merely require the Secretary to 'review the symptoms,' 20 C.F.R. § 404.1526, and make specific findings essential to the conclusion." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990) (where ALJ's "comprehensive evaluation of evidence" was "adequate statement of the foundations on which" the ALJ based "the ultimate factual conclusions," ALJ need not state why a claimant failed to satisfy every section of listing).

There was substantial evidence to support the ALJ's RFC analysis.  The ALJ also relied on the findings of Dr. Georgis in assessing Westbrook's RFC.  AR 65-66.  After examining Westbrook, Dr. Georgis concluded that her condition would impose limitations for 12 continuous months.  AR 315.  He opined that despite her degenerative joint disease and tibial dysfunction of her left ankle, Westbrook could stand or walk up to four hours in an eight hour work day and

United States District Court
Northern District of California

1   could sit for up to six hours; that she could lift and carry 10 pounds of weight frequently and 20

2   pounds occasionally; had some postural limitations; and should be limited from working at

3   heights.  AR 315.  This analysis is supported by Dr. Dann's report.  AR 317-322.  *See* AR 318

4   (sitting about 6 hours per day, and standing/walking at least 2 hours per day).  Finally, as

5   discussed below, the ALJ fully considered Westbrook's testimony and Dr. Specht's opinion, and

6   provided appropriate reasons for partially rejecting that evidence.

7           2.   The ALJ discounted Westbrook's testimony based on clear and convincing

8                reasons.

9           In reaching his decision, the ALJ also addressed the evidence suggesting that Westbrook

10  did not have the RFC to perform sedentary work, including Westbrook's testimony regarding her

11  pain and her functional limitations.  AR 66-68.

12          In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must

13  engage in a two-step analysis.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th

14  Cir. 2004).  First, the claimant must produce objective medical evidence of an underlying

15  impairment or combination of impairments that could reasonably be expected to produce pain.

16  *Id*.  Then, the ALJ must engage in a credibility analysis and make a finding about the intensity,

17  persistence, and limiting effects of the claimant's symptoms.  *Id*.  If there is no affirmative

18  evidence of exaggeration or malingering, then the ALJ may reject the claimant's testimony

19  regarding the severity of symptoms only if the ALJ makes specific findings stating clear and

20  convincing reasons for doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

21  must state specifically which symptom testimony is not credible and what facts in the record lead

22  to that conclusion.  *Id*.; *see also* SSR 95-5p.  "The ALJ may consider at least the following factors

23  when weighing the claimant's credibility: [her] reputation for truthfulness, inconsistencies either

24  in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work

25  record, and testimony from physicians and third parties concerning the nature, severity, and effect

26  of the symptoms of which [she] complains."  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir.

27  2002) (internal quotation marks and citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d

28  1035, 1039 (9th Cir. 2008).

United States District Court
Northern District of California

The ALJ found that Westbrook's symptoms could reasonably be expected to cause the alleged symptoms, but he discounted Westbrook's pain and limitations testimony.  AR 66.  The ALJ provided clear and convincing reasons for doing so: inconsistencies in Westbrook's testimony; evidence of her daily activities during the period of alleged disability; and her work record.  The ALJ found that Westbrook's activities throughout her alleged period of disability included working for "local 377 iron workers" in 2009, performing "arduous piledriving work" and welding work in 2008, and playing basketball in 2006 despite a diagnosis of degenerative osteoarthritis.  AR 67.  He concluded these activities were inconsistent with her alleged functional limitations throughout this period.  This was a permissible inference.  *See Thomas*, 278 F.3d at 958-59.  Moreover, he observed that in order to obtain California state unemployment benefits, Westbrook was required to declare under penalty of perjury that she was actively searching for work and able to work.  AR 67.  At the hearing, the ALJ asked Westbrook about the apparent inconsistency of representing to California unemployment agencies that she was able and willing to work, after having applied for disability benefits based on her inability to work.  AR 36-37.  Westbrook explained that she applied concurrently for unemployment and disability benefits for financial reasons: she was about to be evicted and had to do something.  Had she been offered a position, however, she could not have performed the work.  AR 37.  The ALJ noted Westbrook's representation that she could perform work as being inconsistent with the functional limitations Westbrook alleged, but also seemed to note it as a more general credibility problem.[4]  The ALJ was entitled to discount Westbrook's testimony on this ground.  *See id.*  Similarly, the ALJ noted that Westbrook told her doctor that she had been laid off from her construction job, not that she had been forced to stop working due to pain.  AR 67 (citing AR 302)).  The ALJ also permissibly relied on this statement to discount Westbrook's pain testimony.  *See Bruton v. Massanari*, 268 F. 3d 824, 828 (9th Cir. 2001) (ALJ permissibly relied on claimant's statement at hearing and to his

---

[4]  The ALJ noted that a post-hearing query revealed that Westbrook had earned $12,800.28 in 2009.  AR 64.  Westbrook's failure to acknowledge these earnings at the hearing was another inconsistency that affected the ALJ's evaluation of Westbrook's credibility.  AR 67.  Although the court did not find evidence of the 2009 earnings in the AR, Westbrook filed tax forms in this case showing net earnings of $12,791 for 2009 and of $12,894 for 2010.  *See* Doc. No. 7 at 14-17.

United States District Court
Northern District of California

1    doctor that he left employment because he was laid off).  The ALJ offered clear and convincing

2    reasons based on substantial evidence in the record for discounting Westbrook's testimony

3    regarding her functional limitations during the period of alleged disability.

4              3.   The ALJ provided specific and legitimate reasons for discounting Dr. Specht's

5                   opinion.

6          Generally, a treating physician's opinion should be given more weight than opinions of

7    doctors who did not treat the claimant.  *See Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.

8    1987); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (distinguishing between treating

9    physicians, examining physicians who do not treat the claimant, and non-examining physicians);

10   *see also* 20 C.F.R. § 404.1527(d)(2) (treating doctor's opinion entitled to "controlling weight"

11   where it is "well-supported" and "not inconsistent with the other substantial evidence").  When

12   the opinion of a treating doctor is not contradicted by that of another doctor, the ALJ may reject

13   that opinion only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830.  If the opinion is

14   contradicted by that of another doctor, the treater's opinion can only be rejected for specific and

15   legitimate reasons that are supported by substantial evidence in the record.  *Id*. at 830-31.

16         Dr. Specht is a treating physician who evaluated Westbrook for knee replacement surgery.

17   AR 17-18, 353-54.  She diagnosed Westbrook as having arthritis and obesity, and opined that

18   Westbrook could only sit one hour or stand 15 minutes before adjusting her position; could only

19   sit for a total of one hour in an eight hour workday, stand for a total of one hour in an eight hour

20   workday, and walk for a total of one hour in an eight hour work day; that Westbrook would need

21   to take unscheduled breaks during the day and elevate her leg and should never lift or carry

22   twenty pounds or more.  AR 336-37.  The ALJ "afford[ed] less than great weight" to Dr. Specht's

23   opinion of Westbrook's limitations.  AR 66.  Dr. Specht's opinion supported Westbrook's

24   testimony regarding her functional limitations for part of the alleged disability period, as she

25   opined Westbrook's limitations started on October 1, 2009.  AR 339.  However, Dr. Specht's

26   opinion conflicted with the RFC evaluations of Dr. Georgis and Dr. Dann.  *See* AR 312-315 (Dr.

27   Georgis), 317-322 (Dr. Dann); *see also* AR 271-278 (RFC evaluation by another consultative

28   examiner, Dr. Vogelsang, that also contradicts Dr. Specht's opinion, but which the ALJ did not

11

1  rely upon).  Dr. Georgis and Dr. Dann both found that Westbrook suffered from severe

2  limitations, but concluded that she could sit for up to six hours in an eight hour day (AR 315,

3  318), and stand or walk for at least two hours (AR 318) or up to four hours (AR 315) each day.

4       Because Dr. Specht's opinion was contradicted by that of other doctors, the ALJ could

5  reject it only by offering "specific and legitimate reasons" supported by substantial evidence.  *See*

6  *supra*.  In deciding how much weight to give to Dr. Specht's opinion, the ALJ considered the fact

7  that Dr. Specht had only examined Westbrook once, a week before submitting the form on

8  Westbrook's behalf.  AR 66, 336-39, 345-46.  The duration of the treater relationship and the

9  frequency of contact between patient and treater are relevant factors an ALJ should consider when

10 assigning weight to a medical opinion.  *See* 20 C.F.R. § 404.1527(c)(2)(i).  The ALJ also

11 discounted Dr. Specht's opinion because it was conclusory and not supported by medical

12 findings, and it was contradicted by the opinion of Dr. Georgis, the consultative examiner.  AR 66

13 (citing AR 315).  The Ninth Circuit consistently has held that questions of credibility and

14 resolution of conflicts in testimony are functions solely of the ALJ.  *Saelee v. Chater*, 94 F.3d

15 520, 522-23 (9th Cir. 1996); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

16 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a

17 nontreating source is based on independent clinical findings that differ from those of the treating

18 physician, the opinion of the nontreating source may itself be substantial evidence; it is then

19 solely the province of the ALJ to resolve the conflict").  More specifically, "the ALJ is

20 responsible for determining credibility and resolving conflicts in medical testimony."  *Saelee*, 94

21 F.3d at 522-23.  The ALJ was entitled to resolve conflicts in the medical testimony.  And finally,

22 the ALJ discounted Dr. Specht's opinion because she did not opine that Westbrook's symptoms

23 had or were expected to last 12 months.  AR 66, 337.  Thus, as noted above, Dr. Specht's opinion

24 did not support a finding of disability.  *See* 20 C.F.R. § 404.1505; *see also Flaten*, 44 F.3d at

25 1459.  As he was required to do, the ALJ provided specific and legitimate reasons for discounting

26 Dr. Specht's opinion.  *See Reddick*, 157 F.3d at 725.

27 **C.     Evidence Supporting The ALJ's Determinations At Step Five.**

28       The ALJ described a person with Westbrook's limitations in a hypothetical question posed

United States District Court
Northern District of California

12

United States District Court
Northern District of California

to the VE.  The VE testified that someone with those limitations could perform "the full range of sedentary work."  AR 50.  The ALJ properly asked, and the VE confirmed, that her testimony was consistent with the DOT.  AR 50; SSR 00-4p.  The ALJ added two additional limitations to account for medical side effects and self-reported pain, requiring employment that called for simple one- to two-step work and had a sit/stand option.  The VE testified that someone with those additional limitations could perform two occupations that were found in sufficient numbers in the national or local economies.[5]  The ALJ was entitled to rely upon the testimony of the VE.  *See* SSR 00-4p.  Subsantial evidence supports the ALJ's determinations at Step Five.

### III.   NEW EVIDENCE

In her June 2010 report, Dr. Fortenko opined that severe limitations began affecting Westbrook in January 2010.  *See* AR 368-372.  This report was submitted to the Appeals Council, which concluded it would not have affected the ALJ's decision.  AR 2.  Westbrook did not argue for remand based on Dr. Fortenko's report, and the report does not alter the court's conclusion that substantial evidence exists to support the ALJ's determinations.  *See Sandgathe*, 108 F.3d at 979 (there is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see also Burch*, 400 F.3d at 679 (district court must uphold the Commissioner's conclusions where the evidence is susceptible to more than one rational interpretation).

Westbrook also declares in support of her motion for summary judgment that her surgeon "took [her] off work" at some point in 2011.  Doc. No. 17 at 2.  This extra-record statement does not constitute evidence that is "material" to the ALJ's June 2010 decision, and does not warrant

---

[5]   In his decision, however, the ALJ concluded that the VE's testimony had been inconsistent with the DOT to the extent the VE addressed the availability of a sit/stand option, but the ALJ relied on the VE's years of experience in the industry and accepted the VE's testimony on the sit/stand option.  The DOT does not address sit/stand options.  *See Smith v. Astrue*, 2010 U.S. Dist. LEXIS 141443, *30-*34 (N.D. Cal. Sept. 16, 2010).  Some courts therefore have held that VE testimony regarding sit/stand options is an inconsistency with the DOT that requires remand where the VE does not adequately explain the basis for concluding that there was a sit/stand option for a particular occupation.  *See id.* ("light work" did not necessarily allow employee to sit)*; see also Brown v. Astrue*, 2012 U.S. Dist. LEXIS 132546, *17 (E.D. Cal. Sept. 17, 2012) (citing *Smith*).  The Appeals Council found that the ALJ and the VE adequately addressed the conflicts between the DOT and the VE's testimony.  AR 2.  Because the DOT defines "sedentary work" as work that "involves sitting most of the time, but may involve walking or standing for brief periods of time" (DOT Appx. C), the conflict at issue in *Smith* and *Brown* is absent here.  In any event, Westbrook has not argued, nor provided any evidence, that a conflict exists.

remand under 28 U.S.C. § 405(g): there is no evidence Westbrook was taken off work for at least twelve months, and there is no evidence that this relates to the same period of disability that the ALJ considered.

Although neither Dr. Fortenko's report nor Westbrook's declaration require remand, they do suggest that Westbrook may reapply for disability benefits and Supplemental Security Income alleging a later onset period.  Defendant concedes as much.  Doc. No. 19 at 7.

### CONCLUSION

Based on the foregoing, the undersigned grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

The clerk of the court is directed to close the file.


IT IS SO ORDERED.


Dated: March 5, 2013

_____
Nandor J. Vadas
United States Magistrate Judge

United States District Court
Northern District of California

14